# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) Plaintiff, ) | Case No. 2:13-cr-00239-JAD-PAL |
| ) vs. ) | **ORDER** |
| ) JEREMY HALGAT, et al., ) ) Defendants. ) ) | (Ex Parte Application - Dkt. #102) (Emg Mot Quash - Dkt. #106) (Emg Mot Compel - Dkt. #111) (LVMPD Joinder - Dkt. #118) |

Before the court are the following motions which were filed on the eve of trial and referred to the undersigned:

1. *Ex Parte* Application for Order to Issue Out of State Document Subpoena on the Bureau of Alcohol, Tobacco, Firearms and Explosives due to Inability to Pay filed by Jeremy Halgat (Dkt. #102);

2. The government's Emergency Motion to Quash Subpoenas (Dkt. #106);

3. Defendant Jeremy Halgat's Emergency Motion to (1) Compel FRCP 16 Discovery and Brady, Giglio, and Jencks Act/FRCP 26.2 Materials the Government Refuses to Disclose, (2) for the Production of the Undercover and Confidential Informant Cell Phones for Expert Inspection, and (3) Request for Exclusionary Sanctions (Dkt. #111); and

4. Interested Party The Las Vegas Metropolitan Police Department's Joinder to the Government's Emergency Motion to Quash Subpoenas (Dkt. #118).

## BACKGROUND

The Indictment (Dkt. #1) was returned June 19, 2013. Halgat made an initial appearance and arraignment and plea on June 28, 2013, was appointed counsel, pled not guilty, and the matter was set

1  for trial August 20, 2013.  The court entered its standard Order Regarding Pretrial Procedure (Dkt. #25)
2  the same day,  giving the parties thirty calendar days in which to file and serve any pretrial motions and
3  notices of defense pursuant to LCR 12-1.  Responses to the motion were required to be served within
4  fourteen days, and any reply within seven calendar days.

5        The *Ex Parte* Application (Dkt. #102) was filed January 5, 2014.  It cites Rule 17(b) of the
6  Federal Rules of Criminal Procedure and seeks an order allowing Halgat to subpoena documents that
7  counsel for the United States and ATF have refused to provide in discovery.  The court normally issues
8  sealed orders based on *ex parte* applications to protect the mental impressions and defense strategy of
9  defense counsel.  However, where, as here, defense counsel requested these materials from both the
10 government and the ATF stating why she believed she was entitled to these maters, there is no reason to
11 enter a sealed order.  Counsel for Halgat attaches the email exchanges with counsel for the government
12 requesting the information sought in the *ex parte* application.

13       The government's Emergency Motion to Quash (Dkt. #106) seeks to quash subpoenas issued
14 pursuant to a Sealed Order (Dkt. #95) of the district judge granting Halgat's *Ex Parte* Request for
15 Subpoenas Pursuant Rule 17(b) (Dkt. #86).  The Motion to Quash was filed January 6, 2014, two days
16 after the government learned that the subpoenas had been issued.  These subpoenas were sent to over
17 twenty-four law enforcement officers and agents, a number of whom reside out of the district.

18       Halgat's Emergency Motion to Compel (Dkt. #111) was filed January 8, 2014.  The basis for
19 filing it as an emergency motion is that government counsel announced at calendar call that it had
20 complied with its discovery obligations, but counsel for Halgat "has concerns" that the government has
21 not reviewed evidence in possession of other agencies and departments involved in this case "as
22 required to properly comply with their *Brady* obligations."

23       Halgat's motions were not timely filed.  The government's motion to quash was filed two days
24 after the government learned that *ex parte* subpoenas had been authorized and served and was therefore
25 promptly filed in response to Halgat's *ex parte* applications and the court's order.

26       The deadline for filing pretrial motions ran October 31, 2013.  *See* Order (Dkt. #50) granting the
27 parties' Stipulation for an Extension of the Pretrial Motion Deadline.  The parties' stipulation to extend
28 the pretrial motion deadline did not request an extension of the trial date which was then set for

December 3, 2013. The parties must have known, when they submitted their stipulation, that the court could not decide any pretrial motions filed by the extended briefing schedule and still keep the trial date allowing adequate time for the court to decide matters referred automatically to the magistrate judge, the time for objections, or for that matter, the time needed by the district judge to decide motions.

The government filed a motion to continue the trial on November 27, 2013, the day of the calendar call for the December 3, 2013 trial. The motion to continue was filed because of co-Defendant McCall's health issues and need for chemotherapy. Counsel for Halgat opposed the motion to continue arguing his speedy trial rights should not be violated because a co-Defendant was undergoing cancer treatment, and that he would be prejudiced by a continuance because his case is defensible and he wished to proceed to trial as quickly as possible. *See* Response (Dkt. #67). Halgat also filed a Motion to Sever (Dkt. #68) which argued that the trial date should not be continued and that the court should sever McCall from this case and allow Halgat and his co-Defendant to proceed to trial.

At the calendar call conducted November 27, 2013, counsel for Halgat and co-Defendant Morrow announced ready for trial. The district judge calculated the must-be-tried date under the Speedy Trial Act, and continued the trial to the current trial stack. This flurry of motions followed more than sixty days after the deadline for filing pretrial motions, more than thirty days after the matter was continued to the current trial stack, and after counsel announced ready for trial. The court could therefore deny Halgat's motions on this basis alone. The motions do not claim that any changed circumstances justify ignoring court-imposed deadlines for filing pretrial motions. The issues addressed in these motions could have, and should have, been addressed before the expiration of the extended deadline for filing pretrial motions.

Defense counsel is admonished for filing these untimely motions, and warned that repeat conduct of this nature will be sanctioned. Filing pretrial motions on the eve of trial, well after the deadlines established by the court, after not only announcing ready for trial at calendar call, but also insisting that the trial not be continued, is an abusive litigation tactic. It interferes with the court's timely management of the docket. Of necessity, the court must put aside the matters of other litigants who need and deserve rulings on their matters. Late motions unnecessarily burden the court and opposing counsel. There is simply no justification for demanding "emergency"treatment of untimely

filed motions at the same time insisting the trial should go forward so that the client's speedy trial rights are not violated. However, the court will reluctantly address the motions on their merits.

**I.     Halgat's *Ex Parte* Application for an Order to Issue Out of State Document Subpoena (Dkt. #102)**

Halgat's *Ex Parte* Application seeks an order allowing counsel to serve out-of-state subpoenas for ATF documents. Specifically, it identifies eight ATF orders, memoranda and six ATF policies or standard operating procedures. He filed his *ex parte* request because the government and ATF refused to provide these materials and he states they are "important for cross examination in this case because the Government has failed to produce recordings from prior dealings and interactions between the undercover and Mr. Halgat." He asserts that they are "important to prove the elements of Mr. Halgat's defense and also necessary to support Halgat's motion for spoliation, and a negative inference jury instruction." Halgat asserts that he has "uncovered information" that ATF policies required all of the interactions between the undercover and Halgat to be recorded. He also claims that there are "missing interactions that should have been recorded." A proposed order and subpoena duces tecum is attached to the *ex parte* application. If granted, it would command production of the documents to the law offices of counsel for Halgat on January 10, 2014, at noon.

**A.     Federal Rule of Criminal Procedure 17.**

Fed. R. Crim. P. 17 governs the issuance of subpoenas in criminal proceedings. The process for obtaining subpoenas returnable at trial for those who are able to pay for them is governed by Rule 17(a). Rule 17(b) describes the procedure for defendants who are unable to pay the requisite witness fees and permits an *ex parte* application by a defendant requesting that the court issue a subpoena. The court will authorize issuance of a subpoena to a defendant who is unable to pay "if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense." Fed. R. Crim. P. 17(b). "Although prior judicial authorization is required, the *ex parte* nature of a Rule 17(b) application serves to put a defendant on equal footing with the Government because the Government is not required to give a defendant notice as to those witnesses that it intends to subpoena to testify at trial." *United States v. Reyes*, 162 F.R.D. 468, 469 (S.D.N.Y. 1995).

///

Rule 17(c) establishes the process by which federal courts can issue subpoenas *duces tecum* for the production of evidence before trial. Rule 17(c)(1) governs the production of documents and objects and provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

*Id*.

Unlike a subpoena issued under Rule 17(a) or 17(b) to compel a witness to appear at trial, the court has discretion to direct that a subpoena *duces tecum* be made returnable **before** trial. However, Rule 17 is not a discovery device. subpoena duces tecum be made returnable *before* trial. *United States v. Nixon,* 418 U.S. 683, 689 (1974), *superceded by statute on other grounds,* Fed. R. Evid. 104(a), *as recognized in Bourjaily v. United States,* 483 U.S. 171, 179 (1987), *superceded by statute on other grounds,* Fed.R.Evid. 801(d)(2), *as recognized by United States v. Kemp,* No. CR.A. 04-370, 2005 WL 352700 at *2 (E.D. Pa. Feb. 10, 2005); *see also United States v. LaRouche Campaign*, 841 F.2d 1176, 1179 (1st Cir. 1988); *United States v. Fletcher*, 461 F.Supp.2d 1101, 1102 (D. Ariz. 2006) ("[s]ubpoenas issued pursuant to Rule 17(c) are not discovery devices and may not be used to expand the scope of Rule 16."); *United States v. Shinderman*, 232 F.R.D. 147, 150 (D. Me. 2005); *United States v. Carter*, 15 F.R.D. 367, 369 (D. D.C. 1954) ("to construe Rule 17 as a discovery rule would render Rule 16 nugatory and meaningless and would defeat its limitations"). Rule 17(c) may, however, be used to obtain evidentiary materials. *See Nixon*, 418 U.S. at 699-700; *Bowman Diary Co. v. United States*, 341 U.S. 214, 219-20 (1951).

Rule 17(c)(1) does not authorize a party to subpoena a witness and require him to report at some time or place other than either a trial or hearing to be held at which he is to testify. Its purpose is to permit the issuance of subpoenas only to compel attendance at hearings conducted by the court and trial. *See United States v. LaFuente*, 54 F.3d 457 (8th Cir. 1995), *cert. denied*, 516 U.S. 902 (prosecutor improperly secured attendance of witness at pretrial interview by subpoena); *United States v. Keen*, 509 F.2d 1273 (6th Cir. 1975) (government's use of subpoenas to compel witnesses to attend pretrial interview miles from place of trial at a proceeding not authorized by court was improper);

*United States v. Stirone*, 168 F. Supp. 490 (D. Pa. 1957), *aff'd*, 262 F.2d 571 (3rd Cir. 1958), *rev'd on other grounds*, 361 U.S. 212 (1960) (improper for government to issue subpoenas compelling witnesses to appear at U.S. Attorney's Office in federal courthouse to ensure keeping of proper records).

Leave of court is required for a pretrial subpoena *duces tecum*. *United States v. Beckford*, 964 F. Supp. 1010, 1021 n.10 (D. Va. 1997). A number of courts have held that the court has discretion to require production of documents by subpoena *duces tecum* prior to trial. *United States v. Lieberman*, 608 F.2d 889 (1st Cir. 1979), *cert. denied*, 444 U.S. 1019; *United States v. Parker*, 586 F.2d 422 (5th Cir. 1978), *cert. denied*, 441 U.S. 962; *United States v. Murray*, 297 F.2d 812 (2nd Cir. 1962), *cert. denied*, 369 U.S. 828. The Supreme Court has stated:

> Enforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues. Without a determination of arbitrariness or that the trial court finding was without record support, an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c).

*Nixon*, 418 U.S. at 702.

### B.     Standard for Pretrial Production

The burden is on the party seeking production to show good cause for the production before trial. *Beckford*, 964 F. Supp. at 1022. In *United States v. Iozia*, the district court formulated a standard for establishing good cause for production prior to trial requiring a showing:

> (1) That the documents are evidentiary and relevant;
>
> (2) That they are not otherwise procurable by the defendant reasonably in advance of trial by exercise of due diligence;
>
> (3) That the defendant cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial;
>
> (4) That the application is made in good faith and is not intended as a general fishing expedition.

13 F.R.D. 335, 338 (D.C.N.Y. 1952). Other federal courts have generally followed the *Iozia* test for establishing good cause for pretrial production. *See, e.g.*, *Nixon*, 418 U.S. at 699; *United States v. Stein*, 488 F.Supp.2d 350, 366 (S.D.N.Y. 2007); *U.S. v. Gel Spice Co., Inc.*, 601 F.Supp. 1214 (D.C.N.Y. 1985).


In *Nixon,* the Supreme Court held that the party seeking pretrial production bears the burden of establishing relevancy, admissibility, and specificity. *Id*. at 700. The burden is on the party seeking the subpoena "to show the evidentiary nature of the requested materials with appropriate specificity." *United States v. Skeddle*, 178 F.R.D. 167, 168 (N.D. Ohio 1996). Conclusory allegations of relevance and admissibility are insufficient to meet the moving party's burden. *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981), *cert. denied*, 455 U.S. 949 (1982); *United States v. Jackson*, 155 F.R.D. 664, 667 (D. Kan. 1994). It is not enough that the documents requested in a Rule 17(c) subpoena *duces tecum* may have some potential of relevance and evidentiary use. *United States v. Burger*, 773 F.Supp. 1419, 1425 (D. Kan. 1991). Rather, there must be a sufficient likelihood that the requested material is relevant to the offenses charged in the indictment, and the moving party must make a sufficient preliminary showing that the requested material contains admissible evidence regarding the offenses charged. *Nixon* at 700. The specificity requirement "ensures that the subpoenas are used only to secure for trial certain documents or sharply defined groups of documents." *Jackson*, 155 F.R.D. at 667 *(citing United States v. Crosland*, 821 F.Supp. 1123, 1129 (E.D. Va. 1993)). The specificity requirement also prevents a subpoena *duces tecum* issued pursuant to Rule 17(c) from being used as a "fishing expedition to see what may turn up." *Bowman Dairy Co.*, 341 U.S. at 221. Or, as the court noted in *United States v. Noriega*, 764 F.Supp. 1480, 1493 (S.D. Fla. 1991), "[i]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused."

    **C.**    ***Ex Parte* Applications for Pretrial Production**

Rule 17(b) allows an *ex parte* application by a defendant unable to pay for an order compelling a witness to appear. Rule 17(c), however, does not contain any language allowing an *ex parte* application for pretrial production by a defendant without financial means. Courts are split as to whether a party may make an *ex parte* application for a pretrial subpoena *duces tecum*, and the Ninth Circuit has not ruled upon the issue. Some courts have found that under no circumstance may a party make an *ex parte* application for a subpoena *duces tecum*. *See, e.g.*, *United States v. Fox*, 275 F.Supp.2d 1006, 1012 (D. Neb. 2003) (finding Rule 17(c) does not normally permit *ex parte* applications for subpoena *duces tecum* unless the sole purpose of seeking the documents is for use at trial); *United States v. Peterson*,

1  196 F.R.D. 361, 361-62 (D.S.D. 2000) (Rule 17(c) motion may not be made *ex parte* where subpoena
2  requests documents be produced prior to trial); *United States v. Finn*, 919 F.Supp. 1305, 1330 (D.
3  Minn. 1995) (same); *United States v. Hart*, 826 F.Supp. 380, 381 (D. Colo. 1993) (court has discretion
4  to allow pretrial production of documents under Rule 17(c) where both parties are permitted to examine
5  documents); *United States. v. Urlacher*, 136 F.R.D. 550, 555-56 (W.D.N.Y. 1991) (scheme of Rule 17
6  supports congressional intent that compliance with subpoena *duces tecum* requires notice to opposing
7  counsel).
8       Other courts have held that a party may make an *ex parte* application.  *See Beckford*,
9  964 F.Supp. at 1025-31; *United States v. Daniels*, 95 F.Supp.2d 1160, 1162-63 (D. Kan. 2000)
10 (*ex parte* applications permissible where source or integrity of evidence would be 'imperiled' or trial
11 strategy disclosed); *United States v. Tomison*, 969 F.Supp. 587, 589-95 (E.D. Cal. 1997) (*ex parte*
12 applications are generally disfavored, but are permitted in limited circumstances, such as where a
13 subpoena served on third party, and notice would compromise trial strategy).  Further, as the court
14 observed in *United States v. Reyes*:

> There are strong policy reasons in favor of an *ex parte* procedure.  If a source of evidence were to be identified before the issuance of a subpoena, the source or the integrity of the evidence might be imperiled.  In addition, a party may have to detail its trial strategy or witness list in order to convince a court that the subpoena satisfies the *Nixon* standards of specificity, relevance, and admissibility.  If a full adversary hearing was required to obtain a subpoena *duces tecum*, a party would be forced to reveal this information to the opposing side, a result which would occur even if a court declined to issue the subpoena.  In this vein, the Court is mindful that it is often defendants who seek a subpoena *duces tecum* on an *ex parte* basis in order to avoid disclosing their trial strategy to the Government.

21 162 F.R.D. at 470.
22      This court agrees with those courts which have found that an indigent defendant should be
23 permitted to make an *ex parte* application for pretrial production of documents under limited
24 circumstances, such as where identification of the source of evidence potentially imperils the source or
25 integrity of evidence; or where notice of a subpoena *duces tecum* would compromise defense counsel's
26 trial strategy; or where a constitutional interest of a defendant is implicated.  Although the court agrees
27 that an indigent defendant should be permitted under limited circumstances to make an *ex parte*
28 application for a subpoena *duces tecum* for pretrial production of evidence, it does not follow that the

defendant is entitled to strategic advantage or tactical surprise.  Rule 17(c)(1) plainly provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence" and "may permit the parties and their attorneys to inspect all or part of them."  *Id*.

There is no reason to file this motion as an *ex parte* application under seal.  Counsel for Halgat already requested these materials from the government and the ATF.  This court allows *ex parte* applications of this nature to put a defendant on equal footing with the government so that a defendant need not provide the government with pretrial notice of those witnesses he or she intends to subpoena to testify at trial, and to protect the mental impressions and defense strategy of counsel.  Where, as here, Halgat already requested this information from the government, there is no justification for filing this matter as an *ex parte* application.

There is also no justification for requesting that the documents subject to the proposed subpoena *duces tecum* be produced at a proceeding other than a pretrial hearing or trial, and exclusively to defense counsel.  The court has the discretion to require pretrial production of documents by subpoena duces tecum.  However, as the party seeking pretrial production Halgat must meet the *Iozia* test.  The court finds Halgat has not established that the documents are evidentiary and relevant, or that he cannot properly prepare for trial without them, or that the application is anything other than a general fishing expedition for materials Halgat was not entitled to received in discovery.  Rule 17 is not a discovery device.  Halgat's conclusory statements are insufficient to meet the *Iozia* test.  The motion will therefore be denied.

**II.    Government's Emergency Motion to Quash Subpoenas (Dkt. #106).**

The government's motion seeks an order quashing subpoenas the district judge authorized in a Sealed Order (Dkt. #95) granting Halgat's Sealed *Ex Parte* Application (Dkt. #86).  The subpoenas were sent to twenty-four law enforcement officers and agents, a number of whom reside out of the district.  The government's motion to quash is limited to Halgat's subpoena to produce documents, and does not seek to quash the appearance of any of these witnesses.

Halgat's *Ex Parte* Application (Dkt. #86) asked for a court order allowing him to subpoena documents because the United States refused to provide them in discovery.  The *ex parte* application

did not contain any mental impressions of counsel, defense strategy or other justification for filing the application *ex parte* under seal. The *ex parte* application did not provide any justification for the request for these documents. Additionally, the subpoenas that were issued would improperly call for pretrial production of the materials to the law office of counsel for Halgat on January 7, 2014. The court will therefore grant the government's emergency motion to quash. Halgat's initial application did not meet the *Iozia* test and improperly called for pretrial production of the documents to the law offices of defense counsel rather than at a trial or hearing in this matter. The proposed subpoenas are also overbroad, not limited in time, and involve law enforcement sensitive information.

**III.     Halgat's Emergency Motion to Compel (Dkt. #111).**

This motion was filed on an emergency basis because Halgat has "concerns" that the government has not reviewed all evidence in the possession of other agencies and departments involved in this case which he claims the government is obligated to review to comply with its *Brady* obligations. Halgat argues that anything that relates to his entrapment defense that negates his guilt or mitigates the offense is *Brady* material the government is obligated to produced. Halgat is concerned that the government has not conducted a proper *Brady* analysis. Since calendar call on December 31, 2013, the government has produced additional discovery, including 302 pages of reports of investigation, including surveillance reports on January 6, 2014–eight days before trial.

Additionally, the government allowed defense counsel a limited inspection of the undercover officer's cell phone. The government took possession of the undercover agent's cell phone at Halgat's request but is refusing to provide Halgat with a cell phone report of information on the phone in usable form or to allow Halgat's expert to conduct a forensic evaluation of the phone. Halgat contends the government is attempting to limit this case to the final event in which Mr. Halgat was involved. However, his entrapment defense relies upon prior inducements made by the undercover officer to solicit him to commit crimes for which he did not show a predisposition. Halgat claims that the government has violated his obligations under the parties' joint discovery agreement, Local Criminal Rule 16-1(b)(1)(D), and Federal Rule of Criminal Procedure 16(d)(2)(C). Thus, the court should preclude the government from using newly disclosed reports of investigation, cell phone text messages,

/ / /

and the first reports of investigation and audio from the initial discussion of the undercover reverse sting for any purpose at trial.

Halgat claims this motion was filed on an emergency basis because counsel attempted to resolve this matter without court intervention. However, the government kept moving the date for the inspection of materials. Halgat first requested inspection on December 4, 2013, and the inspection did not occur until December 30, 2013. Counsel for Halgat indicates that she first made a request for Rule 16, *Brady, Giglio*, and *Jencks* Act discovery in an October 31, 2013 letter to Ms. Silva and Mr. Duncan. The government responded November 19, 2013, that it had produced all discoverable information in its possession. The government also took the position that it was not obligated to produce evidence which is not material, *i.e.,* evidence the United States intended to offer in its case-in-chief, evidence which does not relate to the subject matter of the witness' testimony, or evidence which will not undermine confidence in the outcome of the trial. However, the government's letter offered to allow Mr. Halgat's expert to speak to a representative from the Las Vegas Metropolitan Police Department familiar with the information regarding surveillance logs and protocols. The phone call finally occurred November 26, 2013, but it was with ATF Special Agent Wear, not a representative from LVMPD. Agent Wear reportedly refused to answer nearly all of the expert's questions.

Halgat argues that the information requested is material to his defense because there are serious audibility issues regarding the audio recordings and the information concerning the equipment specifications and capabilities "will shed light" regarding whether the audio and video were recorded in the highest quality equipment that was capable of recording. Additionally, Halgat did not learn until December 18, 2013, that the video of the truck bed was corrupt. Finally, counsel was informed by Special Agent Wear that Camera 3 from the air strip was broken into small pieces "to avoid corruption problems as the longer or larger the file is, the greater the chance of corruption." Halgat wants the specifications and other information regarding the audio and video equipment to assist his expert "in determining if the other equipment has a similar capability to avoid corruption that wasn't used."

There are also equipment failures with the surveillance video and an inspection of the media facility and equipment will allow Halgat's expert to determine if court "issues on the controller end" were possible with the equipment used.

11

Halgat, his expert, government counsel and Agent Wear met December 30, 2013, at LVMPD and determined that most of the audio and video files in evidence at LVMPD were not downloaded in the original form. Halgat's expert wants to identify and inspect the equipment used for their recordings to validate the files, and has also asked for the proprietary code for the files as originally transferred or downloaded. Halgat's expert also requested the flag designations or descriptors for all audio and video files produced.

Halgat is requesting ATF, DOJ, and LVMPD policies and standard operating procedures for handling digital data from surveillance. The information was requested from government counsel who initially responded that the information regarding ATF and DOJ policies could be found online. Halgat's counsel was unable to find any ATF policies, but did find a memo criticizing the ATF for Operation Fast and Furious and numerous citations to order and memoranda about ATF policies and standard operating procedures. Government counsel checked further and advised Halgat's counsel that ATF and their legal counsel would not release this information without a court order. Counsel for Halgat therefore filed a sealed, *ex parte* application for subpoenas *duces tecum* to obtain these documents. Government counsel responded that she would be moving to quash a number of the subpoenas.

Halgat argues that he is entitled to ATF and DOJ policies regarding recording of conversations between informants and suspects and agents, and policies on surveillance because he intends to argue that undercover Agent Broncado acted in bad faith by failing to record various pre-transaction conversations. These unrecorded conversations allegedly "would have shown how Defendant was induced to participate in illegal activities."

With respect to the undercover cell phone, counsel for Halgat was initially told that the government did not have text messages between the undercover officer and her client, and later given conflicting information. However, she was eventually informed in conducting a pretrial conference with TFO Broncado, the government learned that he had retained his undercover cell phone and text messages. The government provided these text messages to defense counsel.

Defense counsel received supplemental discovery January 6, 2014, consisting of 302 pages of reports of investigation pertaining to incidents not charged in the indictment which the government

claimed it was under no obligation to produce. Halgat suspects there is "missing discovery" that would support his entrapment defense. Finally, although undercover Agent Broncado's cell phone was made available for inspection January 7, 2014 for two-and-a-half hours, this was not enough time. The government refuses to produce the confidential informant's cell phone.

The government filed a response to the motion January 13, 2014 (Dkt. #135). The government argues the motion should be denied because all of the requests are untimely and on the merits, Halgat is not entitled to this discovery. The government concedes that there was an error with the video recording device that was located in the back of a truck utilized during the undercover operation. As a result, only screen shots of the video were recovered and disclosed to defense counsel in July 2013. There are other videos of the event, and the jury can evaluate and weigh the evidence. The government gave defense counsel and her expert an opportunity to inspect the original impounded recordings, and made the case agent available for a phone call with the defense expert.

The government argues that many of the materials Halgat seeks are subject to a qualified law enforcement privilege as the government argued in response to Halgat's prior Motion to Compel (Dkt. #89). *See* government's Response (Dkt. #108).

The request for agency and department policies and standard operating procedures was not timely requested, and the requests are overbroad to the extent they request information after the completion of the events which resulted in this prosecution, which is March 2013. Halgat has failed to articulate a basis for requiring forensic inspection of the undercover officer's cell phone by simply alleging there might be missing text messages about another alleged gun sale between the undercover and Halgat. The parties dispute whether that event took place. The government has informed defense counsel that it will not use anything from the undercover officer's cell phone, including text messages, during its case-in-chief. However, it provided copies of those text messages to defense counsel, and allowed defense counsel to inspect the phone. Halgat has also articulated no reason to inspect the confidential informant's cell phone. The CI is not a percipient witness in this case.

The government acknowledges its duties under *Brady-Giglio* and the *Jencks* Act, and affirmatively represents it will comply with its obligations. The government also represents it has already complied with its obligations under *Henthorn*. Finally, the government asks that the court deny

Halgat's request for exclusionary and other sanctions arguing Defendant cannot possibly claim prejudice by late disclosure of documents he requested as he has listed a number of the exhibits he seeks to exclude on his own exhibit list.

For the reasons articulated in the court's Order (Dkt. #122) denying Halgat's Motion to Compel (Dkt. #89), this motion is denied.  Halgat has not met his threshold burden of establishing that the broad discovery he seeks is material to his defense or exculpatory.

Having reviewed and considered the moving and responsive papers,

**IT IS ORDERED** that:

1. The *Ex Parte* Application for Order to Issue Out of State Document Subpoena on the Bureau of Alcohol, Tobacco, Firearms and Explosives due to Inability to Pay filed by Jeremy Halgat (Dkt. #102) is **DENIED**;

2. The government's Emergency Motion to Quash Subpoenas (Dkt. #106) is **GRANTED**;

3. Defendant Jeremy Halgat's Emergency Motion to (1) Compel FRCP 16 Discovery and Brady, Giglio, and Jencks Act/FRCP 26.2 Materials the Government Refuses to Disclose, (2) for the Production of the Undercover and Confidential Informant Cell Phones for Expert Inspection, and (3) Request for Exclusionary Sanctions (Dkt. #111) is **DENIED**; and

4. Interested Party The Las Vegas Metropolitan Police Department's Joinder to the Government's Emergency Motion to Quash Subpoenas (Dkt. #118) is **GRANTED**.

Dated this 13th day of January, 2014.

_____
Peggy A. Leen
United States Magistrate Judge